# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Donald E. Walter | Sitting Judge if Other than Assigned Judge | Michael T. Mason |
|---|---|---|---|
| **CASE NUMBER** | 01 C 2290 | **DATE** | 6/10/2002 |
| **CASE TITLE** | Stallings-Daniel vs. The Northern Trust Co. | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]
(2) ☐ Brief in support of motion due _____ .
(3) ☐ Answer brief to motion due_____ . Reply to answer brief due_____ .
(4) ☐ Ruling/Hearing on _____ set for _____ at _____ .
(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____ .
(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____ .
(7) ☐ Trial[set for/re-set for] on _____ at _____ .
(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____ .
(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
   ☐ FRCP4(m)   ☐ General Rule 21   ☐ FRCP41(a)(1)   ☐ FRCP41(a)(2).
(10) ■ [Other docket entry] For the reasons stated in the attached Memorandum Opinion and Order, plaintiff's motion to compel [64-1] and defendant's motion for protective order [71-1] are granted in part and denied in part. Enter Memorandum Opinion and Order.

(11) ■ [For further detail see order attached to the original minute order.]

| | No notices required, advised in open court. | | | |
|---|---|---|---|---|
| | No notices required. | | number of notices | **Document Number** |
| ✓ | Notices mailed by judge's staff. | | JUN 11 2002 | |
| | Notified counsel by telephone. | | date docketed | 90 |
| | Docketing to mail notices. | | | |
| | Mail AO 450 form. | U.S. DISTRICT COURT | docketing deputy initials | |
| | Copy to judge/magistrate judge. | | 6/10/2002 | |
| | | | date mailed notice | |
| KF | courtroom deputy's initials | 02 JUN 10 PM 3:05 | KF | |
| | | Date/time received in central Clerk's Office | mailing deputy initials | |

IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| SHIRLEY STALLINGS-DANIEL ) | |
| ) | |
| Plaintiff, ) | |
| ) | No. 01 C 2290 |
| v. ) | |
| ) | Judge Donald E. Walter |
| THE NORTHERN TRUST COMPANY, ) | Mag. Judge Mason |
| ) | |
| Defendant. ) | |

**DOCKETED**
JUN 1 1 2002

MEMORANDUM OPINION AND ORDER

Michael T. Mason, United States Magistrate Judge:

We hope we are nearing the end of the discovery disputes between these two parties, and intend to use this opinion to finalize several outstanding discovery issues and define the scope of another. In our March 18, 2002 order addressing one of the plaintiff's motions to compel, we granted the defendant the opportunity to respond to several of plaintiff's requests. Both parties have withdrawn some of their objections and requests in the interest of judicial economy, and we thank them for doing so. Before us now are those remaining discovery disputes on which the parties cannot agree, as well as defendant's motion for a protective order regarding additional discovery propounded by the plaintiff. We will address each request in turn.

**Plaintiff's Fifth Request for Production of Documents**

Request 6(c): Plaintiff's original request (as set forth in her March 11, 2002 motion), asked for "all recommendations received by Kathy Fulton for 2nd Vice President" as referenced on page 43 of Terri Reed's deposition. Defendant objected that Fulton was a Human Resources assistant who merely received copies of promotion recommendations for

clerical processing, and that it had already given the plaintiff copies of all promotion recommendations for individuals she identified as similar to her. In her response to defendant's objection, plaintiff describes this request differently, asking for "[a]ll lists of potential candidates for promotion that were generated by Tim Kaczmarek referenced in Terri Reed's deposition (see page 42 of Terri Reed's deposition), not otherwise produced. . ." This is not the first time that the plaintiff has changed the scope or reasoning for an already propounded request. She argues that she needs these documents to try to prove her theory that others employed by defendant were promoted in less than three years. We are not convinced that the records plaintiff seeks are either relevant or tailored to discover the information she seeks. Indeed, other documents already in the plaintiff's possession demonstrate that there were in fact certain employees who were promoted in less than three years, and some whose promotion track was much longer.[1] We are not going to expand the scope of discovery at this date. This request is denied.

Request 9: This request asks for all documents related to the creation and dissolution of the ART team. Plaintiff contends that Vicino's offer of a position as head of the ART team was a sham. We agree that these documents are relevant to plaintiff's claim of pretext and order that they be produced.

Requests 13-14: These requests seek documents regarding one of plaintiff's supervisors, Sharon Alexander. Specifically, plaintiff notes that her other supervisor, Kay Vicino,

---

[1] For example, plaintiff has a copy of a document submitted by Richard Bordelon to the EEOC in response to its request for documents (bates numbers D000144, 145, 147, 148). Regardless of plaintiff's contention that this document contains misleading information, it does provide the promotion histories for minority and non-minority individuals in the Trust Systems department.

2

testified generally that she had had discussions with employees about Alexander's communication style; she implies that Alexander was not always an effective communicator. Plaintiff speculates that information about Alexander's alleged failure to communicate could explain the complaints made about plaintiff's Valuations Team and show that Vicino knew it was Alexander's fault, and not plaintiff's, that the team was having problems. We are not convinced from Vicino's deposition that such "complaints" would ever have been memorialized into written documents or that such documents would be relevant. Further, plaintiff has evidence of Vicino's knowledge of Alexander's communication issues in the deposition itself. This request is denied.

### Plaintiff's Fourth Request to Admit

Requests to Admit 5 - 6: This dispute concerns plaintiff's contention that attorney Richard Bordelon purposefully omitted from defendant's response to plaintiff's EEOC charge the fact that plaintiff had complained of race discrimination internally prior to receiving a negative performance review some time in February, 1999. Indeed, a large number of plaintiff's document requests center on her attempt to demonstrate that Bordelon knowingly submitted false or misleading information to the EEOC. Plaintiff has redrafted these two requests, and asks that defendant admit or deny that: 1) "Terri Reed informed Richard Bordelon prior to February 1, 1999 that plaintiff said words to the effect that she believed defendant had delayed her promotion because of her race"; and 2) "Richard Bordelon knew at the time that he submitted defendant's EEOC position statement to the EEOC, that plaintiff said words to the effect that she believed defendant had delayed her promotion because of her race to Terri Reed prior to February, 1999." (sic) As we discuss below, before addressing each of plaintiff's requests that concern the EEOC submissions, we

3

carefully examined her arguments, the defendant's responses, and the actual documents submitted to the EEOC. We deny plaintiff's request for these admissions and make the following comment:

It appears that if defendant were to deny either or both of the above requests to admit, plaintiff would attempt to impeach the answers with the deposition testimony of Reed and Bordelon, and/or the position statement itself. In the interest of putting this issue to rest, we will try to short-circuit additional inquiry right now. Despite plaintiff's contentions to the contrary, we do not believe that either Reed's or Bordelon's depositions conclusively admit either of these statements. Reed admits that plaintiff had asked her some time in late 1998 whether plaintiff's promotion delays were because of her race. Reed also testified that in early 1999 she thought that plaintiff might file a charge of discrimination, and that she shared this belief with Bordelon some time after that. Bordelon, for his part, admits that as of some time in February 1999, it was clear that plaintiff was complaining of race discrimination, and his position statement reflects that plaintiff complained to him about race discrimination in February, 1999. Even if Bordelon and/or Reed knew plaintiff was complaining of race discrimination earlier than January 1999, there is no evidence that others at defendant – such as those who completed her performance evaluation – were aware that plaintiff believed her failure to be promoted was because of her race.[2]

A defendant's written statement to the EEOC is intended to communicate its position regarding a recently filed charge of discrimination. The EEOC does not require

---

[2] We note that Reed testified that she did meet with several of plaintiff's supervisor's about plaintiff's promotion concerns in 1998, but there is no evidence that Reed mentioned plaintiff's concerns vis-a-vis her race.

4

defendants to submit such statements, nor does it require that they be verified. Further, such statements are often used as a starting point for additional investigation by the EEOC investigator. We don't know if plaintiff raised Bordelon's alleged omissions or misstatements to the EEOC or what type of discovery was conducted there. Although some of the information Bordelon submitted to the EEOC may not be in the format plaintiff believes would most help her case, her own comments about what is missing or inaccurate demonstrate that she already has the information necessary to make arguments in support of her position. We caution the plaintiff about continuing to argue that Bordelon submitted false information to the EEOC unless she has undisputable proof (as opposed to speculation based on generalized deposition testimony), in support of her contentions. This caution applies to her other discovery requests concerning the EEOC discussed below as well.

Requests to Admit 11 -12: These requests also deal with Bordelon's submissions to the EEOC; specifically, they ask whether Bordelon received a certain one page document request from the EEOC investigator and whether he submitted a particular document, presumably in response. Both of the documents speak for themselves, and plaintiff has already deposed Bordelon about their contents and whether the EEOC modified its request after talking to Bordelon. There is no evidentiary advantage to be gained by requiring the defendant to answer these questions again, but we note that defendant is estopped from denying the existence or authenticity of the documents, or arguing that it did not receive the first one or produce the second. This Court is well aware of the parties' arguments regarding the alleged significance (or lack thereof) of these documents and what they say, and it will be able to adjudge their relevance and admissibility at trial should they be placed

5

at issue. These requests are denied.

Request to Admit 14: This request asks the defendant to admit or deny whether certain individuals listed on the document Bordelon submitted to the EEOC were promoted to 2nd Vice President ("2VP") after the plaintiff filed her charge of discrimination. Plaintiff claims that this request is relevant both to whether defendant had any Black managers in plaintiff's group before she filed her charge and also goes to defendant's credibility.[3] Since this is not a pattern and practice case, the number of Black managers in plaintiff's group is not relevant; in any event, the Court has reviewed numerous documents listing various employees' promotion dates and is well able to determine whether these dates were before or after plaintiff's promotion in September, 1999. As to whether the defendant's argument that it has a three-year promotion track is credible, plaintiff sets forth at least three arguments disputing this claim, including referencing defendant's own records that allegedly show many officers who were promoted in less than three years. We do not believe an admission regarding whether certain individuals were promoted before or after plaintiff's charge of discrimination is relevant to whether any employees were promoted in less than three years. Plaintiff has obtained discovery from defendant on the length of the promotion track for various employees; this information is much more relevant to her claims. Thus, we deny this request.

---

[3] Plaintiff's mention of credibility in this instance seems to refer only to her argument that defendant's claim that it has a three year management promotion track is not credible. Elsewhere in her requests to admit, plaintiff argues that defendant was not credible when it submitted certain information to the EEOC. If plaintiff is arguing that this request is relevant to credibility in that sense, we do not see the relevance and thus uphold our denial of this request.

6

Requests to Admit 15 - 17: These requests focus again on the accuracy of Bordelon's submission to the EEOC as well as facts regarding when certain individuals were promoted to 2VP. We have read the parties' arguments and have also reviewed for a second time Bordelon's affidavit, submitted in support of defendant's response to plaintiff's motion to reconsider our denial of her request for electronic discovery. Bordelon's affidavit sets forth in detail his interaction with the EEOC during its investigation of plaintiff's claims. He provides copies of all correspondence from the EEOC, including its document requests, and explains the various conversations he had with the investigator, during which certain requests were modified. Considering this information as well as plaintiff's own arguments, we can find no evidence that Bordelon submitted false or misleading information to the EEOC. Further, plaintiff had an opportunity to depose Bordelon on the subject of his EEOC submissions. We see no relevance in requiring the defendant to continue answering requests to admit on this subject. Further, we reiterate our caution to the plaintiff regarding any continuation of this line of argument. These requests are denied.

Request to Admit 20: This requests asks defendant to speculate on whether Bordelon knew that certain information he was submitting to the EEOC would not be relevant to its investigation. This request is vague and calls for a legal conclusion about the EEOC and thus is denied.

**Defendant's Motion for Protective Order**

Defendant filed a motion for protective order asking that we relieve it from responding to plaintiff's sixth set of interrogatories and sixth set of document requests. In its memo, defendant accuses plaintiff of embarking on a campaign to "harass, annoy and oppress" defendant by filing irrelevant and overbroad discovery requests. Although we

7

agree that many of plaintiff's requests are duplicative of information she already has or irrelevant to her claims, we will not fault her for the tenacity with which she has pursued this case. Now however is the time for the parties to evaluate and focus on the information they already have, as we believe that most of the information relevant to plaintiff's claims (whether it helps her case or not), has been produced. Discovery would be a never-ending process if courts allowed parties to investigate every comment, issue, or speculation raised at depositions or allowed parties to tailor their discovery based on their own belief of what the truth is or should be.[4]

That said, although defendant asks that we grant a protective order with regard to plaintiff's two most recent sets of discovery requests, it then states that it will attempt to answer some of them. Further, plaintiff has withdrawn some of her requests; all that remain are nine interrogatories and one document request, each of which we will review individually.

Ironically, several of the current requests by the plaintiff appear to be some of the most relevant of the many she has propounded. Whether this is because she has become better able to focus on the major issues or because she finally received predicate information she needed from the defendant does not matter.

Interrogatories 1 -2: These interrogatories ask for hire and promotion information for particular Black employees of defendant who were promoted to 2nd VP, and also asks whether they were on the technical or management track at defendant. Presumably,

---

[4] Engaging in discovery that relentlessly pursues every tangent can also have the unintended consequence of clouding the Court's ability to differentiate between the major or important issues – which might be worthy of additional discovery – and those that are only of minimal significance.

plaintiff needs this information so she can assess whether her theory that minority employees were promoted at a slower rate than White employees is correct. Despite the fact that defendant may have produced pieces of this information in answering other discovery requests, we do not believe it has produced hire and promotion information for every individual, and we order it to do so.

Interrogatory 8: Plaintiff seeks identification of every team under the supervision of plaintiff's supervisors that functioned without a project leader between June 1, 1997 and December 31, 1999. Plaintiff argues that it was defendant's decision not to provide her team with a project leader that led to her performance and workload-management issues, which resulted in her being removed as team leader. She speculates that her team was the only one to operate without a project leader and the only one with a Black team leader; she wants to know if all the teams led by White team leaders had project leaders. Defendant argues that this request asks for information regarding its business judgment, which is not discoverable.

If in fact plaintiff's was the only team to function without a project leader, and she was the only Black team leader, such information may be relevant.[5] We grant this request, but make a limiting instruction: we order defendant to identify any teams that functioned without a project leader, but plaintiff is not entitled to additional discovery on the scope or purpose of any of the identified teams. We can envision requests from the plaintiff that she

---

[5] We take note of defendant's objection that its staffing decisions are business decisions not reviewable by the Court. Although we are ordering defendant to answer this interrogatory, we recognize that even the answer plaintiff is looking for may not be very probative of discrimination. In any event, we recognize that the Court may not second-guess defendant's staffing decisions.

be provided with the purpose of all identified teams, the number of team members, etc., in order to try to demonstrate that the other teams without project leaders were much different than plaintiff's team; we will not entertain requests to discover whether such speculation is true.

Interrogatory 9: Plaintiff has simplified this interrogatory to focus on the details surrounding Darrin Foote's removal from one team leader position, his placement in another, and his eventual move to a technical position. We are not going to parse through depositions to determine whether the plaintiff could have or should have asked this question; it is relevant to defendant's anticipated identification of Foote as a White employee similarly situated to plaintiff, and thus we order that it answer this interrogatory as amended by plaintiff in her April 23, 2002 brief.

Interrogatory 10: Plaintiff wishes to know the identity of every individual who has claimed plaintiff has a gambling problem. As plaintiff has refused to produce her tax returns so that defendant could confirm or deny this alleged problem, we deny plaintiff's request to discover the source of the comment.

Interrogatories 11, 13: In these interrogatories, plaintiff seeks the identity of the individuals who made handwritten and typed notations about or relevant to plaintiff and her employment on several produced documents. Although defendant has repeatedly indicated that it will attempt to identify the authors of the comments, it has not yet done so; it also argues that it should not have to respond to additional questions about the documents because plaintiff should have obtained the information through deposition testimony. Again, without parsing the depositions line by line, we cannot determine whether the plaintiff failed to ask the right questions or the defendant failed to give

responsive answers (we suspect a little of both). However, without the identity of the author, we cannot fault plaintiff for not obtaining some of the information she requests. We order defendant to answer interrogatory 11, except for parts c and d, since those subsections cover information unrelated to the comment.[6] Similarly, we order defendant to answer interrogatory 13.

Interrogatory 14: We agree with defendant that the information plaintiff seeks about Don Cavelli's employment at Northern Trust is not relevant to her claim; she admits she already has the information she needs to try to prove Cavelli's hostility towards her, and his subsequent assignments at defendant are not relevant.

Interrogatory 15: In interrogatory 15, plaintiff seeks the identity of the individual who added a paragraph to her performance review that she claims not to have seen before, and other information about the drafts of the review. Defendant has already testified that it does not know who wrote the final paragraph and states that to its knowledge, plaintiff participated in every version of her review. There is nothing to be gained from ordering the defendant to provide these answers again, so this request is denied.

Request to Produce 3: Plaintiff seeks the eligibility requirements for two different bonus awards, one of which she received one-month prior to her first complaints of discrimination. The eligibility requirements for the award plaintiff received – the NTRS award – are relevant to her claims and must be produced; the requirements for the SIP award are not relevant and do not have to be produced.

---

[6] That is, plaintiff was aware of Foote's removal from a team leader position even before she saw the comment on her performance appraisal that Foote was "counseled out of TL".

Plaintiff also argues that defendant has still not produced certain discovery pursuant to our January 24, 2002 order. To the extent it has not yet done so, defendant must produce: 1) a TSD organizational chart for 1999; 2) an unredacted copy of the so-called "update discussion"; and 3) EEO-1 reports for officers in the TSD who were eligible to be promoted to 2VP from 1993 to 1999.[7]

Discovery between the parties is now closed. If either party wishes to file any additional discovery motions, it may do so only with leave of Court. As stated above, plaintiff's motion to compel is granted in part and denied in part and defendant's motion for a protective order is granted in part and denied in part. It is so ordered.

ENTER:

MICHAEL T. MASON
United States Magistrate Judge

Dated: June 10, 2002

---

[7] Our original order only specified that defendant produce "EEO data" reflecting employees eligible for promotion; EEO-1 reports are the most accurate and efficient way to compile and produce that information.